## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CHARLES HOW,**

      **Plaintiff,**

      **v.**

                                  **Case No.  04-2256 JWL**

**CITY OF BAXTER SPRINGS, KANSAS, et al.,**

      **Defendants.**

_____

**RONALD O. THOMAS,**                  **Case No. 04-2257 JWL**

      **Plaintiff,**

      **v.**

**CITY OF BAXTER SPRINGS, KANSAS, et al.**

      **Defendants.**

_____

## <u>MEMORANDUM AND ORDER</u>

These two consolidated cases involve section 1983 claims by the plaintiffs, Charles How and Ronald Thomas, against the City of Baxter Springs, Kansas ("the City"),  City Clerk Donna Wixon, and City Attorney Richard Myers.  The plaintiffs allege in part that the defendants, acting "under color of law," filed and pursued criminal complaints in retaliation for political attacks published in a local newspaper.  This matter comes before the court on

motions for summary judgment by all the parties.   The defendants motions are granted,[1] and the entirety of the action, including any pendent state law claims, is dismissed for the reasons explained below.

## STATEMENT OF MATERIAL FACTS[2]

Ms. Wixon became City Clerk for the City in May 1999.  Her appointment drew sharp criticism from both Mr. How and Mr. Thomas in 2002.  Both men attacked Ms. Wixon in the Baxter Springs News on numerous times for numerous reasons, including her salary, her attitude, her attire, and her interactions with other local officials.

Mr. Thomas wrote several columns in the Baxter Springs News.  Among his numerous complaints published in the local newspaper,   Mr. Thomas criticized Ms. Wixon for her "demoralization" of the staff, her alleged after-hours romances with other local officials, and her "gown slit to the knee . . . very fetching . . . and the beat goes on.  And default of official duties."   Later, he wrote that Ms. Wixon and another local official were "seen driving off together into the sunrise in tight pants and midriff, he wearing at least a broad smile (no pun

---

[1] Mr. How also has moved for summary judgment and argued that his March 11, 2003, advertisement was protected speech as a matter of law.  But without alleging a constitutional violation, his motion is moot.  Even if the court were to address his motion, genuine issues of material fact would preclude the court from granting it.

[2] Consistent with the established standard for summary judgment, the following facts are either uncontroverted or stated in the light most favorable to the nonmoving party.

intended). . . ."  More relevant to this action, on March 11, 2003, he wrote an extended column[3] that stated in part:

> Also Wixon's "ever-loving" patron St. Clair.  They, repeat, they hired her.  Art made the Council motion to employ her, without, of course, job posting as required by law and the above Personnel Rules.   And immediately then, Art moved for a grossly exaggerated salary scale for Wixon, now we're strapped with payment value of $50,000 per year a clerk, counterpart in Columbus. . . $28,000.  Thanks.
>
> And this council parrots this.  "If it's OK with Donna, it's OK with (us)."  The Clerk can't keep a record of city owned property; can't tell us where city boundaries are; can't keep records of city tax, repeat tax, liability (NEWS; 11/26/02 "City behind in tax bill"); can't keep a ward voting map accurate (hand-drawn, way out of date); can't provide Open Records (I've been awaiting for several requests since January and early February); can't keep Ordinances properly recorded (members grouse, haven't we passed this already?) and on and on.
>
> But the Council persistently covers up for her. . . .
>
> . . .
>
> So with Art as Mayor, and the council members returned to office, here's the picture.  Those Roberts for Mayor signs should be taken down, and to read "Wixon for Mayor", and then we have Mayor Wixon, Wixon Springs City Council.   Another sign change, from "City Clerk's Office" to: Wixon's and Kirby's Office".  Lots luck folks; Why?  Well, "if it's OK with Donna, it's OK with us."

In addition, Mr. How submitted numerous letters to the editor criticizing Ms. Wixon in both her personal and her official capacity.  Specifically, Mr. How alleged that Ms. Wixon spent excessive time "after hours" with the Public Works Director, Mr. Kirby, and "spent an hour and a half sitting in his 4 wheel pickup truck with [her] feet propped up on the dash!"  He

---

[3] Throughout this order, the court has included the original grammar and syntax of the published columns by Mr. How and Mr. Thomas.

3

also criticized Ms. Wixon's dress at the County fair, where he alleged she "had on a pair of the skimpiest little ol' shorts you ever seen.  Went almost up to it's waterline you would have thought Halloween had arrived early."  Later in that letter, he alleged that she made a romantic advance at a deputy sheriff.

In perhaps the best summary of his criticisms, Mr. How distinguished Ms. Wixon from prior local officials.  Noting a sharp contrast to Ms. Wixon, he alleged: "They came in every day and did their job for our town.  Never had men in City Hall after hours, never took unnecessary trips, never stirred up hate and discontent, never rode around with city male employees, never sit in a pickup truck with their feet propped up on the dash for an hour and a half, never drove their vehicle to collect gas mileage from the City when the City could have provided a vehicle, and never, never, said anything disrespectful toward our mayors."

Also, in one of his many letters criticizing Ms. Wixon and other local officials, Mr. How  wrote, "With this letter, I want to announce that I have filed for election, to oppose the re-election of Robin Wene, to stop the influence of Danberry and St. Clair in our city council."  Finally, Mr. How prepared a "political advertisement" that was published in the Baxter Springs News on March 11, 2003.  The ad stated in part:

> **FOR MAYOR?**  Art Roberts voted to Hire Donna Wixon & Almost Doubled Her Salary Over the Previous Clerks [sic] Pay In Three Years–Plus Bonuses.  Palzy Walzy With Defeated Council Member Bob St. Clair.  You Folks Want Two More Years Of This Hateful City Clerk?

4

Ms. Wixon learned of both Mr. How's "political advertisement" and Mr. Thomas's column on March 11 and considered both to be a continuation of the numerous attacks the two had launched against her.   After a City Council meeting that evening, Ms. Wixon approached Mr. Myers, the City Attorney, and inquired about filing a criminal defamation charge as a private citizen in her own capacity against Mr. How and Mr. Thomas.   Mr. Myers responded that as a private citizen, she could do so.[4]   Kansas law in fact authorizes private citizens to file a criminal complaint in municipal court.   *See* K.S.A. 12-4113(g), 12-4201; 12-4202.   Ms. Wixon had no other conversations with Mr. Myers on the matter, who had no knowledge of the filing of the complaints until after they had been filed.

At her home after work the evening of March 12, 2003, Ms. Wixon prepared a "Voluntary Statement" justifying her allegation of criminal defamation by Mr. How and Mr. Thomas.   The statement clarified that she was requesting criminal defamation charges be filed

---

[4] Both plaintiffs allege that this fact is genuinely disputed, as well as many other facts that the defendants have supported with citations to the record.   However, neither plaintiff offers any citation to the record to substantiate his allegation.   The court therefore cannot consider this a genuine issue of material fact.   D. Kan. Rule 56.1.   *See also Lake Hefner Open Space Alliance v. Dole*, 871 F.2d 943, 945 (10th Cir. 1989) ("Rather, [plaintiff] must set forth specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegations."); *Bryant v. O'Connor*, 848 F.2d 1064, 1067 (10th Cir. 1988) ("[A] plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations. . . and amplifying them only with speculation about what discovery might uncover."); *Conway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (same); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 815 (7th Cir. 2005) ("Put differently, it is impossible for [plaintiff] to meet his burden of proof and demonstrate retaliatory conduct by relying on the hope that the jury will not trust the credibility of [the defendant's] witnesses."); *Rand v. CF Indus.*, 42 F.3d 1139, 1146-47 (7th Cir. 1994); ("Rule 56 requires [plaintiffs] to produce specific facts. . . . Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors. . . .").

against Mr. How and Mr. Thomas for their knowingly false statements. She identified the March 11 column and letter, as well as "numerous dates prior" in which she believed the three had committed criminal defamation per K.S.A. 21-4004. She signed the statement in front of a witness the next morning, and on her lunch hour, she gave her written statement to a police officer, requesting that he file charges. Then, Ms. Wixon signed the formal criminal complaints, which were delivered to her by the municipal court clerk. Mr. Myers testified that the course of events leading to the filing and processing of the complaint were done in the ordinary manner that would be followed if any private citizen filed a criminal complaint in municipal court.

Ultimately, the complaints were filed in municipal court on March 13, 2003. The complaint against Mr. How stated in part:

> <u>Donna Wixon</u> . . . for complaint against the above shown person alleges and states:
>
> That on or about the 11th day of March, 2003, the above named accused person . . . did then and there contrary to the ordinances of Baxter Springs, Kansas, willfully, unlawfully and intentionally
>
> commit Criminal Defamation against Donna Wixon by communicating to a person orally, in writing, or by ay other means, information, knowing information to be false and with actual malice, tending to expose another living person to public hatred, contempt or ridicule; tending to deprive such person of the benefits of public confidence and social acceptance; to wit: On Tuesday, March 11, 2003 placed a political advertisement in the Baxter Springs News, paid for by Charles How, knowing the information to be false and with actual malice.
>
> Ordinance violated: <u>762 Art 3, Sec 3.9a</u>

Mr. How and Mr. Thomas were never arrested, but they were served with notices to appear in municipal court.  The first court hearing on the case occurred on April 18, 2003.  Mr. Myers appeared on behalf of the City in his capacity as city attorney, but he immediately recused himself based on an apparent conflict of interest.  After entering pleas of not guilty for Mr. How and Mr. Thomas, the court informed Mr. Myers that the City had 30 days to obtain a special prosecutor to refile the criminal defamation charges.

On June 3, 2003, however, the court dismissed the charges without prejudice because the City had not found a special prosecutor.  Then, on June 11, 2003, Ms. Wixon was quoted in the <u>Joplin Globe</u> as saying: "Wixon said there is some confusion about the defamation charge.  She said though it is a city criminal charge, it was initiated by her alone and not by the city attorney or any other city official."  That story also stated that Mr. Myers claimed he had obtained a special prosecutor to refile the charges.  He admits being accurately quoted as saying, "This [special] prosecutor will refile the complaints."  Mr. Myers now admits that this statement was false.  In fact, he had not obtained a special prosecutor at that time, and he never did obtain one.  The charges against the three defendants never were refiled because the two-year statute of limitation eventually expired.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In applying this standard, the court views the evidence and all reasonable

inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)); *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party

must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197-98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## <u>ANALYSIS</u>

The court faces several critical issues: (1) whether Ms. Wixon acted "under color of law" when she filed her criminal complaints against Mr. How and Mr. Thomas; (2) whether the City had an official policy or custom based on actions by Mr. Myers; (3) whether Mr. Myers is entitled to qualified immunity for his actions; (4) whether Mr. Myers violated a clearly established constitutional right of Mr. How and Mr. Thomas; and (5) whether Mr. How's advertisement is protected speech as a matter of law. Ultimately, the court finds that Ms. Wixon did not act "under color of law" and that Mr. Myers's did not violate a clearly established constitutional right of either Mr. How or Mr. Thomas. Also, Mr. How's

advertisement was not protected speech as a matter of law. For the following reasons, the court will dismiss the entirety of this action, including any remaining state law claims. The court will now address each issue in turn.

**1.     Ms. Wixon's Filing of the Criminal Complaints in Municipal Court Was not "Under Color Of Law"**

Section 1983 "creates no substantive civil rights, only a procedural mechanism for enforcing them." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995). The "'under color of state law' requirement is 'a jurisdictional requisite for a § 1983 action,'" which means that the court must examine this gateway issue first. *Id.* (citation omitted). Also, "private conduct that is not 'fairly attributable' to the State is simply not actionable under § 1983, however discriminatory or wrongful the conduct is." *Id.* (citations omitted). "[I]t is 'well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.'" *Id*. at 493. (citation omitted). To hold otherwise "would, for all practical purposes, overlook the important distinction between private and governmental conduct. Furthermore, such an interpretation would impermissibly undermine the policies behind that well-established dichotomy by failing to recognize the existence of a zone of conduct beyond the scope of the federal judicial power and by improperly imposing liability on the state for conduct for which it cannot be fairly blamed." *Id*.

With this in mind, the court analyzes the claim against Ms. Wixon in her official capacity under a two-step process. A "proper analysis requires [the separation of] two different

issues when a § 1983 claim is asserted against a municipality: (1) whether the plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights,* 503 U.S. 115, 120 (1992). Assuming for the sake of argument that the plaintiffs each suffered a constitutional violation or a violation of federal law, they must allege that the City is responsible for that violation. *See City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (calling the "first inquiry" in section 1983 cases brought against municipalities "the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").   This case is one "in which the challenged conduct consists of enforcement of [a municipal ordinance] by [municipal] officials who are themselves parties in the lawsuit; in such cases the question typically is whether the private motives which triggered the enforcement of those laws can fairly be attributed to the State." *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982).

The parties dispute whether Ms. Wixon acted "under color of law" when she filed her criminal complaint in municipal court against Mr. How and Mr. Thomas.   Mr. Thomas himself wrote in his March 25, 2003, column in the <u>Baxter Springs News</u>: "Naturally, no where in that job description is the power to criminally sue for you."[5]   As a possible means to establish state action, the plaintiffs allege that Ms. Wixon had "de facto" authority to cause other city

---

[5] This accurate observation, in fact, confirms the absence of state action.  *See Barnard v. Young*, 720 F.2d 1188, 1189-90 (10th Cir. 1983) ("To the extent that plaintiff alleges that state law did not authorize defendant to [engage in the questioned act], 'the conduct of which [plaintiff] complained could not be ascribed to any governmental decision.") (citation omitted).

officials to expedite her citizen complaint and "morph" it into something other than merely a filed citizen complaint.

Despite the plaintiff's bald allegations, the court finds that Ms. Wixon pursued the entirety of her actions in filing the criminal complaints in her private capacity, outside the scope of her position as City Clerk.   Plaintiffs claim, without any support or citation to the record, that Ms. Wixon and Mr. Myers are lying.   They do so with no specific evidence, circumstantial or direct.   Further, Mr. Myers's uncontradicted testimony established that had another private citizen filed a criminal complaint, the course of action taken by the local officials would have been identical to that taken in regard to Ms. Wixon's complaints filed here.   Neither her job description nor her role as City Clerk enabled her to criminally target the plaintiffs.   In fact, the municipal court dismissed the charges filed by Ms. Wixon because Mr. Myers recused himself and no one else pursued the matter.   Likewise, the plaintiff's have no support for the proposition that Mr. Myers made any determination of probable cause or handled the case in any capacity other than immediately recusing himself.   Plaintiffs ultimately "do not overcome the barrier differentiating purely private conduct from conduct attributable to the government." *Jojola*, 55 F.3d at 494.

Although lacking support, the plaintiffs allege two reasons why Ms. Wixon acted "under color of" the City when she filed the criminal complaints.   First, they allege that she used her "de facto" authority to cause the plaintiffs to face criminal charges.   Second, they allege that

she engaged in "joint action" with Mr. Myers  and "conspired" with him to have the criminal complaints pursued.  The court will examine both allegations.

### a.        Badge of Authority

A plaintiff may establish action "under color of" law  if, in performing a wrongful act, an official is able to do so by virtue of his or her position.  Yet this "misuse of public power" must enable the official to do something only because the official is "clothed with the authority of state law." *Monroe v. Pape*, 365 U.S. 167, 184 (1961).  In other words, "[i]t is axiomatic that 'color' of law means 'pretense' of law, and additionally that 'acts of officers in the ambit of their personal pursuits are plainly excluded.'" *Wahab v. City of New York*, 386 F. Supp. 2d 277, 287-88 (S.D.N.Y. 2005) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)).  There is no "under color of" nexus if an officer does not use his or her "badge of authority" to carry out a misdeed. *Haines v. Fisher*, 82 F.3d 1503, 1508 (10th Cir. 1996).

Even if an official is on duty and in uniform, his or her actions "are not under color of state law unless they are in some way related to the performance of [official] duties." *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990); *see also Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) ("If a government officer does not act within his scope of employment or under color of state law, then that government officer acts as a private citizen.").

Although the plaintiffs might have criticized Ms. Wixon in her official capacity, that does not prove that she pursued criminal charges against them in that same capacity. The court

focuses on the one charged with state action:  Ms. Wixon.  Because she acted in her private

capacity, the plaintiffs cannot establish that she acted "under color of law" for the City.  *See,*

*e.g.*, *O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413, 423 (S.D.N.Y. 2004) (refusing

to impose section 1983 liability against a public official because he did not sue for defamation

while performing his official duties or invoking any special power of public office); *White-*

*Battle v. Democratic Party of Virginia*, 323 F. Supp. 2d 696, 708 (E. D. Va. 2004) ("Despite

[his] position within the local government, his alleged actions underlying the Plaintiff's claims

did not involve his [official] position. . . ."). *Accord D.T. v. Independent Sch. Dist. No. 16*,

894 F.2d 1176, 1186-88 (10th Cir. 1990) (stating that a teacher did not use his "cloak of

authority" to harm a student and thus did not act "under color of" state law); *Jojola*, 55 F.3d

at 493-94 (same).

In this case, moreover, the uncontroverted evidence establishes that Ms. Wixon's

actions were the functional equivalent of filing a civil claim for defamation against the

plaintiffs in state court. By analogy, the Second Circuit[6]  recently recognized that local

officials retain a First Amendment right of their own to sue in their private capacity for

defamation against their critics:

> Indeed, the Second Circuit explicitly held in *Colombo v. O'Connell,* 310 F.3d
> 115 (2d Cir.2002) that public officials are not liable under § 1983 when they
> sue citizens for defamation. In that case Colombo, a politically vocal citizen,

---

[6] The court recognizes that in *Beedle*, the Tenth Circuit held that a municipality could
not bring a libel claim against a citizen in retaliation for protected speech.  That holding,
however, is inapplicable here because the City did not bring the claim, Ms. Wixon did.

14

complained of the alleged illegal activities of O'Connell, a school superintendent. Colombo called for O'Connell's removal from office, and the superintendent threatened to sue for defamation. Colombo filed suit under § 1983 claiming that her First Amendment rights had been violated by this threat of litigation. The Second Circuit held that the superintendent's actions were not the result of his having exercised any "special powers possessed by virtue of state law, nor were his actions made possible only because he was clothed with authority of state law." The court went on to affirm public officials' rights to access the courts by filing private lawsuits.

[F]ar from O'Connell being foreclosed from bringing suit against Colombo in his private capacity, the right of a private individual to sue and defend in the courts is itself protected by the First Amendment because it is the right conservative of all other rights which lies at the foundation of orderly government. It is well-established that public employees do not check all of their First Amendment rights at the door upon accepting public employment. O'Connell, therefore, had no obligation to refrain from suing Colombo privately merely because he currently serves as the Superintendent of Schools of the Town of Stratford, nor did he violate her First Amendment rights by doing so.

*Id*. (internal citations omitted).

Other courts have reached consistent results on the "under color of" issue. *See, e.g., Wright v. City of Las Vegas*, – F. Supp. 2d – , 2005 WL 2560778 (S. D. Iowa, Oct. 12, 2005) (dismissing claims that mayor used his "power, clout and connections" to act "under color of law" because the mayor did not act in his official capacity to intimidate the citizen plaintiff). Also, the Eleventh Circuit stated that a mayor did not act "under color of" law when he engaged in alleged defamation against a citizen. *See Morgan v. Tice*, 862 F.2d 1495, 1499-1500 (11th Cir. 1989). There the court found that nothing in his power as mayor empowered the defendant to defame the citizen. *Accord Johnson v. Rodrigues*, 293 F.3d 1196, 1206 (10th Cir. 2002) (urging that 'state action may be found if, though *only if*, there is such a 'close nexus *between*

*the State and the challenged action*' that seemingly private behavior may be fairly treated as that of the State itself") (citation omitted).

### b.   Joint Action or Conspiracy

Joint action is one of four ways recognized by the Tenth Circuit in *Gallagher* to establish state action, but the plaintiffs cannot identify joint action based on the facts of this case.   Mr. Myers had no involvement in the case outside of his false statements to The Joplin Globe discussed below.   Mr. Myers did not draft the complaint, file the complaint, pursue the complaint, establish probable cause for the complaint, or do anything with Ms. Wixon's criminal complaint other than recuse himself at the first chance he could do so.   Plaintiffs, moreover, cannot establish joint action simply because Ms. Wixon filed a criminal charge.   *Cf. Scott v. Hern*, 216 F.3d 897, 906-07 (10th Cir. 2000) ("A private individual does not engage in state action simply by availing herself of a state procedure.").

Neither plaintiff cites any fact evidencing a conspiracy.   Thus, the court finds that Mr. Myers and the other "county defendants' actions represent at most 'mere approval of or acquiescence in the initiatives of a private party' and therefore represent insufficient state action to sustain a cause of action under § 1983." *Brown v. Millard County*, 47 Fed. Appx. 882, 888-89 (10th Cir. 2002) (quoting *Blum*, 457 U.S. at 1004-05).   And merely because Ms. Wixon and Mr. Myers shared a common goal does not create "joint action" or a "conspiracy" between them.   Instead, they must "share a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1455 (10th Cir. 1995).   At most, the plaintiffs have alleged that Ms.

16

Wixon and Mr. Myers engaged in independent,  although consistent, plans to target the plaintiffs with criminal charges.  This cannot withstand summary judgment.  *See Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000) ("We have continued to apply this heightened pleading requirement to § 1983 claims alleging a conspiracy between private individuals and state officials even after *Leatherman . . . .*"); *Aly v. Rocky Mntn. Holding,* L.L.C., 203 F.3d 834, 2000 WL 18878, * 4-5 (10th Cir. 2000) (insisting that in this context "there must be sufficient evidence of a conspiracy to prevent the jury from engaging in sheer speculation and conjecture"); *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994) (dismissing the plaintiff's conspiracy claim under section 1983 because it alleged "no facts establishing an agreement or meeting of the minds.").

The plaintiffs cite to *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), for support that Ms. Wixon engaged in "joint action" with Mr. Myers.  However, the Tenth Circuit restricted that holding and noted that it "is disinclined to apply *Lugar* to a fact situation where a private party is simply reporting suspected criminal activity to state officials who then take whatever action they believe the facts warrant."  *Lee v. Town of Estes Park*, 820 F.2d 1112, 1115 (10th Cir. 1987).   Even if a party is "insistent" in complaining to local officials, "the mere  furnishing of information to police officers who take action thereon does not constitute joint action under color of state law which renders a private actor liable under § 1983."  *Id.* That is largely what happened in this case.   Accordingly, Ms. Wixon's private action is not "fairly attributable to" the City.  *See Gallagher*, 49 F.3d at 1447 (10th Cir. 1995) (quoting

17

*Lugar*, 457 U.S. at 937).   *See also Beedle*, 422 F.3d at 1075 (same); *Galindo v. Town of Silver City*, 127 Fed. Appx. 459, 467 (10th cir. 2005) (same).

**2.      Liability of the City and Mr. Myers**

      **a.      <u>Official Policy of the City</u>**

A municipality is liable under § 1983 only if it takes "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978).   The "official policy" limitation is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986).   The Court has found, however, that "municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances." *Id.* at 480.   But "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."   *Id.* at 481.   In this instance, "[i]f the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Id.*

Here, Mr. Myers was a municipal official with final decision-making authority to prosecute for the City.   The parties agree that Mr. Myers alone had authority to prosecute a violation of a municipal ordinance.   Thus, a decision by Mr. Myers to prosecute or to make statements to the press regarding a pending prosecution "would have been the 'moving force'

behind the claimed violation of" any constitutional right.   *Beedle v. Wilson*, 422 F.3d 1059, 1068 (10th Cir. 2005) (quoting *Bd. of County Comm'rs,* 520 U.S. 397, 404 (1997)).

### b.   **Qualified Immunity**

Qualified immunity applies in this case because Mr. Myers acted in his administrative role as City Attorney at every stage of the case, even when he spoke to the reporter on June 11. Although he had recused himself from prosecuting this case, that did not remove him from acting as City Attorney of Baxter Springs in his official capacity.   That job encompassed far more than simply prosecuting Mr. How and Mr. Thomas, including making statements to the press about how Baxter Springs was proceeding in its affairs.   Thus, Mr. Myers is entitled to assert qualified immunity, particularly given that the plaintiffs never cited any authority for their claim that Mr. Myers acted outside of his role as City Attorney.

Qualified immunity shields an official like Mr. Myers, sued in his individual capacity, from civil liability when his conduct does not violate a clearly established statutory or constitutional right.   Whether Mr. Myers retains his qualified immunity requires a two-part analysis. The threshold question is, taken in the light most favorable to the plaintiffs, whether "the facts alleged show the officer's conduct violated a constitutional right."   *Saucier v. Katz,* 533 U.S. 194, 201 (2001).   If there is no violation of a constitutional right, the analysis ends. *Saucier,* 533 U.S. at 201.   If the plaintiffs' factual allegations do amount to the violation of a constitutional right, however, "the next, sequential step is to ask whether the right was clearly established at the time of the defendant's unlawful conduct such that a reasonable person in the

defendant's position would have known that the alleged conduct violated the federal right."
*Id*.   Also, qualified immunity is not simply a defense to liability; it is an immunity from suit.
*Douglas* v. Dobbs, 419 F.3d 1097, 1101 (10th Cir. 2005).

At the very least, Mr. Myers is entitled to qualified immunity for his actions taken up
to the point of his June 11 statements to the press.   In fact, the plaintiffs have not even alleged
any recognized constitutional violation by Mr. Myers up to that point.  *See Scott v. Hern*, 216
F.3d 897, 909 (10th Cir. 2000).   As explained above, the plaintiffs fail to cite even
circumstantial evidence of a conspiracy between Ms. Wixon and Mr. Myers, nor any other
constitutional violation.   Up to June 11, Mr. Myers did nothing other than advise Ms. Wixon
that she could pursue the matter privately and then immediately recuse himself from the case.
But on June 11, Mr. Myers falsely told a reporter that the City would refile criminal charges
against Mr. How and Mr. Thomas, which the plaintiffs assert constitutes retaliatory
prosecution under established section 1983 case law.

Despite their best efforts to argue that the facts here should constitute retaliatory
prosecution, the plaintiffs have failed to state a cognizable claim.   They cannot identify a single
case from the Tenth Circuit, or any other Circuit Court of Appeals, holding that a prosecutor's
knowingly false statements to a reporter are actionable under section 1983.   Perhaps a
retaliatory prosecution is actionable, such as in *Beedle*, 422 F.3d 1059, but that decision does
not control the less severe facts of this case.   Mr. Myers simply made hollow statements to
a reporter, which is not the same as filing charges and prosecuting the case against Mr. How

and Mr. Thomas.  *Cf. Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003) (dismissing an inadequate section 1983 claim against a city attorney because plaintiff could not identify an established violation).

Even if the plaintiffs were to allege a constitutional violation based on false statements to the press, they certainly could not prove that the contours of that violation were clearly established as of June 11, 2003.  The doctrine of qualified immunity protects public officials performing discretionary functions unless their conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jantz v. Muci,* 976 F.2d 623, 627 (10th Cir.1992) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). To be clearly established, "'there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains.'" *Murrell v. School District No. 1, Denver, Colo.,* 186 F.3d 1238, 1251 (10th Cir. 1999) (quoting *Medina v. City & County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992)); *see also Beedle v. Wilson*, 422 F.3d 1059, 1069-70 (10th Cir. 2005).

Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Id.* at 807.  Therefore, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued."

*Hunter v. Bryant*, 502 U.S. 224, 229 (1991).  This court is bound by the "presumption in favor of immunity for public officials acting in their individual capacities." *Hidahl v. Gilpin County Dep't of Soc. Servs.,* 938 F.2d 1150, 1155 (10th Cir. 1991).

Upon Mr. Myers's assertion of qualified immunity, "the burden shifts to the plaintiff to show that the defendant is not entitled to that immunity." *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005); *see also, Scott v. Hern,* 216 F.3d 897, 908-09 (10th Cir.2000) (an attorney analogous to a prosecutor has qualified immunity for actions that are primarily investigative or administrative).   "Warning against rights asserted at too high a level of generality, the Supreme Court has made clear that the relevant inquiry must be undertaken in the specific context of the case." *Douglas v. Dobbs*, 419 F.3d 1097, 1101 (10th Cir. 2005). In rejecting the plaintiff's asserted claim, the court in *Douglas* emphasized that the plaintiff "cite[d] to no statutory or case law to support her claim" of a constitutional violation.  *Id.* at 1103.   Likewise, the plaintiffs here merely cite to cases that acknowledge a section 1983 violation based on prosecuting someone in retaliation for protected speech.  They fail to apply that line of cases, however, to the case of a city attorney giving false statements to a reporter concerning criminal charges that were never filed.

In line with this, the Tenth Circuit has affirmed that a prosecutor is entitled to qualified immunity from suit when speaking to press. *Joseph v. Yocum*, 53 Fed. Appx. 1  (10th Cir. 2002).   In *Yocum*, the prosecutor informed the media that the plaintiff was arrested even though the charges were later dismissed.  *Id*. at *3-4.  Yet the Tenth Circuit rejected the plaintiff's claim and upheld the general rule that a prosecutor's statements to the press are

shielded by qualified immunity.  *Id*.  This result extended the general rule that "a prosecutor's statements to the press are considered an administrative function entitling the prosecutor to qualified immunity in most instances."  *Arnold v. McClain*, 926 F.2d 963, 969 n.5 (10th Cir. 1991).  *See also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (same).  Here, Mr. Myers acted as City Attorney and not as prosecutor, but his administrative function was the same.

To expose Mr. Myers to liability, the plaintiffs have the burden both to point out a cognizable violation, and more importantly, to prove that the contours of that violation are clearly established.  The plaintiffs fail on both accounts.  They did not demonstrate a constitutional violation, let alone a violation with clearly established contours.  Thus, Mr. Myers is entitled to qualified immunity from suit.

**IT IS THEREFORE ORDERED BY THE COURT** that Ms. Wixon's motion for summary judgment against Mr. How (doc. 99) is granted, Ms. Wixon's motion for summary judgment against Mr. Thomas (doc. 103) is granted, Mr. How's motion for summary judgment (doc. 97) is denied, and Mr. Myers's and the City's motion for summary judgment (doc 95) is granted.  The entirety of this action is hereby dismissed.

**IT IS SO ORDERED** this 15th  day of December, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

23